A93A1405, A93A1406. MIKART, INC. v. MARQUEZ (two cases).
(438 SE2d 633)

POPE, Chief Judge.

Plaintiff/appellant Mikart, Inc. is a small, closely held pharmaceutical company. Defendant Jose Marquez was a long-time friend of the Arteche family which founded Mikart. He was one of the first employees of the company and was an officer and director of the company from 1975 until 1984.

On January 8, 1976, Marquez executed a $40,000 promissory note in exchange for shares of stock in Mikart. Under the terms of the note, Marquez was to repay the note over a period of ten years by making $4,000 annual installments. It is undisputed that Marquez made the first installment payment but failed to make the other payments. Marquez claims that the remainder of the indebtedness was forgiven by the company. Mikart disputes the note was forgiven and in 1984 cancelled 72,000 shares of stock held in Marquez's name. Mikart did not sue Marquez on the note. Marquez claims Mikart improperly cancelled his shares and that he owns 135,000 rather than 63,000 shares.

In April 1991, Mikart filed its complaint seeking declaratory judgment concerning the number of shares owned by Marquez and also seeking expenses of litigation.

*Case No. A93A1405*

1. In this case Mikart filed five enumerations of error, four of which complain that the trial court committed reversible error by dismissing Mikart's action for declaratory judgment. Mikart charges that the dismissal was sua sponte by the trial court and erroneous for several reasons. We do not agree. A declaratory judgment may not be granted in the absence of a justiciable controversy. "The plaintiff must show facts or circumstances whereby it is in a position of uncertainty or insecurity because of a dispute and of having to take some future action which is properly incident to its alleged right, and which future action without direction from the court might reasonably jeopardize its interest." (Citations and punctuation omitted.) *Chattahoochee Bancorp v. Roberts*, 203 Ga. App. 405, 406 (416 SE2d 875) (1992). We agree with the trial court that plaintiff's declaratory judgment action merely seeks judicial confirmation of its decision to cancel 72,000 of Marquez's shares in Mikart. Since Mikart made that decision in 1984, it has acted consistently with the position; for example,

only allowing Marquez to vote 63,000 shares at shareholders' meetings. Mikart contends its claim for declaratory relief is proper because it needs direction concerning dividend payments with regard to the disputed shares. During the deposition of the President of Mikart, he testified that dividends have not been paid to Marquez because "we believe that he had some shares and we didn't know exactly how many shares actually were owned by [Marquez]. It was sort of a misunderstanding. We decided that we better not pay until we get a clear view of what he actually owns." By letter dated September 24, 1991, however, Marquez received notice via a letter to his attorney that because he disputed the number of his shares, Mikart placed the dividends into escrow, in an interest-bearing account, the dividends declared in 1990 for the 63,000 undisputed shares and future dividends would be treated the same way. The record reveals that all dividends for the 63,000 undisputed shares were set aside and that Mikart made no arrangements for dividends on the 72,000 disputed shares. Thus, that action too is consistent with Mikart's position that Marquez owns 63,000 shares. A decision by the trial court will be affirmed if it is right for any reason. Because Mikart has not shown it is in a position of uncertainty, it is not necessary that we examine the trial court's alternative bases for dismissing Mikart's declaratory judgment claim.

Mikart's reliance on our decision in *Morales v. Sevananda, Inc.*, 162 Ga. App. 854 (293 SE2d 387) (1982) is misplaced. In that case three board members of a corporation sought to have declared invalid the action of the remaining four board members of amending both the articles of incorporation and bylaws to provide for a nine-member board instead of seven. The controversy concerned whether the action of the four board members to change the number of directors was properly presented as a declaratory judgment action because until the proper membership of the board was determined, the corporation could not act through its board of directors. In this case, however, there is no uncertainty concerning who may act for the corporation, at most there is concern by Mikart about its decision to cancel 72,000 shares of shareholder Marquez's stock. However, it took action to cancel that stock in 1984 and has consistently taken the position that Marquez owns only 63,000 shares. We cannot give judicial confirmation to a party's defense under the guise of a declaratory judgment action.

With regard to Mikart's argument that the trial court's dismissal of its declaratory judgment claim was sua sponte, the trial court's order reflects and the parties do not dispute that the trial court contacted Mikart and informed it that its action for declaratory judgment was improperly brought and requested that Mikart reform its complaint. Instead, Mikart filed a second amendment to its complaint

but did not dismiss its declaratory judgment claim. Furthermore, the record reflects that Marquez set forth as an affirmative defense the propriety of an action for declaratory judgment under the facts of this case. Under the circumstances, the trial court did not err in dismissing Mikart's claim for declaratory judgment absent a motion by Marquez for dismissal.

2. Mikart charges the trial court improperly denied its motion for a protective order. Marquez as a stockholder of Mikart made a demand pursuant to OCGA § 14-2-1602 to review certain corporate records. One of the documents made available during that record production was a letter dated August 1, 1985 from the attorney who represented Mikart at that time to the President of Mikart. Although communications between a client and attorney are privileged, that privilege can be waived by the client. We hold that the trial court properly held Mikart waived the privilege with regard to the document in dispute. We find particularly compelling with regard to this issue that Mikart had made the letter from its attorney a part of the corporation's minutes.

## Case No. A93A1406

Mikart filed this appeal from the trial court's order granting Marquez partial summary judgment on Count 1 of his counterclaim and denying Mikart's cross-motion for partial summary judgment.

3. We deny Mikart's motion to amend its enumerations of error filed on June 25, 1993. This appeal was docketed on March 31, 1993. Mikart was required to file any enumerations of error within 20 days of that date. Enumerations of error may not be amended after the original filing time has expired. *Parham v. State*, 166 Ga. App. 855, 856 (2) (305 SE2d 599) (1983).

4. Three of Mikart's enumerations of error in this appeal are the same as those raised in Case No. A93A1405. Those arguments are controlled adversely to Mikart by our holdings in Divisions 1 and 2 above.

5. Mikart argues the trial court erred in granting Marquez partial summary judgment as to Count 1 of his counterclaim seeking dividend payments on the 135,000 shares of stock he claims to own in Mikart and denying Mikart's cross-motion for partial summary judgment on that issue. The trial court considered the 63,000 undisputed shares separately from the 72,000 disputed shares. With regard to the 63,000 shares that Mikart does not dispute Marquez owns, the trial court correctly held that there remains no issues of material fact and Marquez is entitled to payment of accrued dividends on those shares.

With regard to the 72,000 disputed shares we must reverse the trial court's decision. We hold that any claim Marquez might have

with regard to those shares is time barred by the four-year statute of limitation applicable to actions for the recovery of personal property, damages for the conversion or destruction of such property, or for injuries to personalty. OCGA §§ 9-3-31 and 9-3-32; see *E. F. Hutton & Co. v. Weeks,* 166 Ga. App. 443 (1) (304 SE2d 420) (1983). Marquez filed his counterclaim on June 17, 1991. Although Marquez's shares were cancelled in 1984, Mikart does not contend that Marquez was made aware of the cancellation immediately. Instead, Mikart argues Marquez had notice at least by November 7, 1986. The minutes of the November 7, 1986 meeting of the annual meeting of shareholders contains the following language: "Mr. Marquez objected to the number of shares he was allowed to vote. He contended that he held 135,000 shares of stock as evidenced by stock certificates in his possession. The Secretary explained to him that the corporate records reflected that he owned 63,000 shares not 135,000 shares and that the certificate in question was improperly issued to him and should not be in his possession. Following discussion, Mr. Marquez was allowed to vote only 63,000 shares." Marquez does not dispute the events of that meeting. Instead, Marquez argues that his claim is not time barred because rather than challenging the cancellation of the shares, he seeks only dividend payments, which first became payable in 1990. We find this argument to be without merit. It is axiomatic that only record owners of stock are entitled to dividend payments. Marquez knew at least by 1986 that Mikart disputed he was the record owner of more than 63,000 shares and disputed that the certificate showing Marquez owned 122,000 shares was properly in his possession. Marquez cannot avoid the consequences of his decision not to challenge the cancellation of his shares for approximately five years by couching his claim as an action seeking dividends. Because any claim concerning the cancelled shares is time barred, we will not address Marquez's arguments that the cancellation was improper.

6. Mikart's failure to pay Marquez dividends cannot support a claim for punitive damages. "Well established is the principle that when a corporation issues its shares and these shares have been accepted by a subscriber, a simple contract has been consummated between the corporation and such shareholder." Kaplan et al., Nadler, Ga. Corporations & Limited Partnerships, § 5.3 (1992). It is axiomatic that the obligation to pay dividends to a stockholder arises from that contract, any action to enforce that obligation is ex contractu and punitive damages are not recoverable for breach of contract, even if the breaching party acted in bad faith as Marquez contends in this case. OCGA § 13-6-10; *Horne v. Drachman,* 247 Ga. 802, 809 (280 SE2d 338) (1981); *Builders Transport v. Hall,* 183 Ga. App. 812 (3) (360 SE2d 60) (1987). Accordingly, the trial court erred in refusing to grant Mikart's motion for partial summary judgment on

Marquez's punitive damages claim set forth in Count 2 of his counter-claim.

7. We hold the trial court did not err in denying Mikart's motion for partial summary judgment as to Count 3 of Marquez's counter-claim seeking expenses of litigation. At trial, the finder of fact may find that Mikart's failure to pay Marquez dividends on the 63,000 undisputed shares caused Marquez to incur substantial and unwarranted expense and find in Marquez's favor on this claim.

8. In light of our holdings in the previous divisions, it is not necessary to address Mikart's remaining enumerations of error.

*Judgment affirmed in Case No. A93A1405. Judgment affirmed in part and reversed in part in Case No. A93A1406. Birdsong, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 21, 1993 —
RECONSIDERATION DENIED DECEMBER 2, 1993 — 

*Troutman Sanders, June A. Sanders, Jeffrey R. Nickerson*, for appellant.
*Whitner K. Livingston*, for appellee.